TROY LAW, PLLC
John Troy (JT 0481)
Aaron Schweitzer (AS 6369)
41-25 Kissena Boulevard
Suite 103
Flushing, NY 11355
Tel: (718) 762-1324
*Attorneys for the Plaintiffs, proposed FLSA Collective
and potential Rule 23 Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
 -------------------------------------------------------------------- x

GUANGFU CHEN and
PEIZHENG FAN,
*on behalf of themselves and others similarly situated,*

|  |  |
|---|---|
| Plaintiffs, | Case No. 19-cv-11895 (JMF) |
| v. | 29 U.S.C. § 216(b) |
|  | COLLECTIVE ACTION & FED. |
|  | R. CIV. P. 23 CLASS ACTION |

MATSU FUSION RESTAURANT INC.
    d/b/a Matsu Japanese Fusion,
J & J ASIAN BISTRO INC.
    d/b/a Matsu Japanese Fusion,
YI CHANG CHEN
    a/k/a Gary Chen, and
MEI FONG CHAN,

**AMENDED COMPLAINT**

**DEMAND FOR JURY TRIAL**

Defendants.
 -------------------------------------------------------------------- x

Plaintiffs GUANGFU CHEN and PEIZHENG FAN (the "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their attorneys, Troy Law, PLLC, hereby bring this complaint against Defendants MATSU FUSION RESTAURANT INC. d/b/a Matsu Japanese Fusion, J & J ASIAN BISTRO INC. d/b/a Matsu Japanese Fusion, YI CHANG CHEN a/k/a Gary Chen, and MEI FONG CHAN (the "Defendants"), and allege as follows:

## INTRODUCTION

1.      This action is brought by the Plaintiffs, on behalf of themselves as well as other employees similarly situated, against the Defendants for alleged violations of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201 *et seq.*, regulations promulgated pursuant thereto (the

"Regulations") 29 C.F.R. §§ 500.0 *et seq.*, New York Labor Law (the "NYLL"), N.Y. Lab. L. §§ 190 *et seq.*, 650 *et seq.*, and the applicable wage order promulgated pursuant thereto (the "Wage Order"), 12 N.Y.C.R.R. § 146, arising from Defendants' various willful and unlawful employment policies, patterns and practices.

2.    Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA, Regulations, NYLL, and/or Wage Order by engaging in a pattern and practice of failing to pay their employees, including Plaintiffs, minimum wage for each hour worked, and overtime premiums for all hours in excess of 40 hours worked per week.

3.    Plaintiffs allege pursuant to the FLSA, that they is entitled to recover from the Defendants: (1) unpaid minimum wages, (2) unpaid overtime premiums, (3) liquidated damages, (4) prejudgment and post-judgement interest; and (5) attorney's fees and costs.

4.    Plaintiff further alleges pursuant to NYLL and the Wage Order that they are entitled to recover from the Defendants: (1) unpaid minimum wages, (2) unpaid overtime premiums, (3) unpaid spread-of-hours premiums, (4) liquidated damages, (5) up to $5,000.00 per Plaintiff for Defendants' failure to provide wage notices compliant with NYLL § 195.1(a) at the times of their hirings or thereafter, (6) up to $5,000.00 per Plaintiff for Defendants' failure to provide wage statements compliant with NYLL § 195.3 with each payment of wages, (7) 9% *per annum* prejudgment interest, (8) post-judgment interest, and (9) attorney's fees and costs.

## JURISDICTION AND VENUE

5.    This Court has original federal question jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, and has supplemental jurisdiction over Plaintiffs' NYLL claims pursuant to 28 U.S.C. § 1367(a).

6.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFFS

7.      Plaintiff GUANGFU CHEN was employed by Defendants to work as a delivery person at Matsu Japanese Fusion, located at 411 E 70th St, New York, NY 10021.

8.      Plaintiff PEIZHENG FAN was employed by Defendants to work as a delivery person at Matsu Japanese Fusion, located at 411 E 70th St, New York, NY 10021.

## DEFENDANTS

*Corporate Defendants*

9.      Defendant MATSU FUSION RESTAURANT INC. d/b/a Matsu Japanese Fusion is a domestic business corporation organized under the laws of the State of New York with a principal address at 411 E 70th Street, New York, NY 10021.

10.      During the period relevant to this lawsuit, MATSU FUSION RESTAURANT INC. d/b/a Matsu Japanese Fusion was a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

11.      During the period relevant to this lawsuit, MATSU FUSION RESTAURANT INC. d/b/a Matsu Japanese Fusion purchased and employees of MATSU FUSION RESTAURANT INC. d/b/a Matsu Japanese Fusion handled goods moved in interstate commerce.

12.      Defendant J & J ASIAN BISTRO INC. d/b/a Matsu Japanese Fusion is a domestic business corporation organized under the laws of the State of New York with a principal address at 411 E 70th Street, New York, NY 10021.

13.      During the period relevant to this lawsuit, J & J ASIAN BISTRO INC. d/b/a Matsu Japanese Fusion was a business engaged in interstate commerce that has gross sales in excess of

five hundred thousand dollars ($500,000) per year.

14.     During the period relevant to this lawsuit, J & J ASIAN BISTRO INC. d/b/a Matsu Japanese Fusion purchased and employees of J & J ASIAN BISTRO INC. d/b/a Matsu Japanese Fusion handled goods moved in interstate commerce.

### *Indiviual Defendants*

15.     The Individual Defendants are officers, directors, managers and/or majority share-holders or owners of one or more of the Corporate Defendants and to the extent they are among the ten largest shareholders are individually responsible for unpaid wages under the Section 630(a) of the New York Business Corporation Law.

16.     YI CHANG CHEN a/k/a Gary Chen is the sole owner, President, and Chief Executive Officer of, and New York Alcoholic Beverage Control principal for, MATSU FUSION RESTAURANT INC. d/b/a Matsu Japanese Fusion, and in those roles (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of em-ployment, (3) determined the rate and method of payment, and (4) maintained employee records for MATSU FUSION RESTAURANT INC. d/b/a Matsu Japanese Fusion.

17.     YI CHANG CHEN a/k/a Gary Chen hired Plaintiffs, told Plaintiffs their starting salaries when he hired them, directly supervised Plaintiffs, and gave Plaintiffs their pay.

18.     YI CHANG CHEN a/k/a Gary Chen purchased supplies for the restaurant.

19.     YI CHANG CHEN a/k/a Gary Chen acted intentionally and maliciously and is an employer pursuant to FLSA, the Regulations, NYLL, and the Wage Order, and is jointly and sev-erally liable with MATSU FUSION RESTAURANT INC. d/b/a Matsu Japanese Fusion.

20.     MEI FONG CHAN was the head waitress at Matsu Japanese Fusion during the period relevant to this lawsuit, and is the sole owner of and New York Alcoholic Beverage Control principal for J & J ASIAN BISTRO INC. d/b/a Matsu Japanese Fusion, and during the period

relevant to this lawsuit (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records for Matsu Japanese Fusion.

21.     During the period relevant to this lawsuit, MEI FONG CHAN was a manager and supervisor of the waitstaff at Matsu Japanese Fusion, customarily directing the work of about 4 or 5 servers.

22.     During the period relevant to this lawsuit, MEI FONG CHAN was an owner, upon information and belief with several other managers and supervisors at Matsu Japanese Fusion, of Apex Japanese Restaurant Inc.

23.     Apex Japanese Restaurant Inc. was formed on June 13, 2018 and upon information and belief sought unsuccessfully to purchase Matsu Japanese Fusion from MATSU FUSION RESTAURANT INC. d/b/a Matsu Japanese Fusion.

24.     Apex Japanese Restaurant Inc. provided Plaintiffs with paystubs—albeit not paystubs compliant with NYLL § 195.3—beginning on or about July 3, 2018 and upon information and belief kept and maintained records of the same.

25.     MEI FONG CHAN acted intentionally and maliciously and is an employer pursuant to FLSA, the Regulations, NYLL, and the Wage Order, and is jointly and severally liable with MATSU FUSION RESTAURANT INC. d/b/a Matsu Japanese Fusion and J & J ASIAN BISTRO INC. d/b/a Matsu Japanese Fusion.

## STATEMENT OF FACTS

***Defendant J & J ASIAN BISTRO INC. d/b/a Matsu Japanese Fusion is a Successor to Defendant MATSU FUSION RESTAURANT INC. d/b/a Matsu Japanese Fusion***

26.     MEI FONG CHAN, in her role as owner of Apex Japanese Restaurant Inc., had knowledge of Matsu Japanese Fusion's pay practices from, at the latest, on or about July 3, 2018.

27.     Upon information and belief, MEI FONG CHAN, in her role as manager and supervisor at Matsu Japanese Fusion, had knowledge of Matsu Japanese Fusion's pay practices throughout the period relevant to this lawsuit.

28.     MATSU FUSION RESTAURANT INC. d/b/a Matsu Japanese Fusion and YI CHANG CHEN a/k/a Gary Chen were sued on May 28, 2018 for violations of the FLSA and NYLL, and were served process in that lawsuit, styled *Zhao et al v. Matsu Fusion Restaurant Inc. et al*, No. 18-cv-04734 (LGS) ("*Matsu I*"), on July 10, 2018.

29.     Plaintiffs in Matsu I accepted an offer of judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure on December 19, 2018, and the Court approved the acceptance on January 16, 2019.

30.     Upon information and belief, MEI FONG CHAN was at all relevant times aware of the pendency of *Matsu I*.

31.     Therefore, MEI FONG CHAN was aware that employees of Matsu Asian Fusion potentially had claims under the FLSA and NYLL against MATSU FUSION RESTAURANT INC. d/b/a Matsu Japanese Fusion.

32.     On or about March 21, 2019, MATSU FUSION RESTAURANT INC. d/b/a Matsu Japanese Fusion sold all of its assets except accounts receivable to J & J ASIAN BISTRO INC. d/b/a Matsu Japanese Fusion for $10.00 only, and for no other good or valuable consideration.

33.     This transaction rendered MATSU FUSION RESTAURANT INC. d/b/a Matsu Japanese Fusion insolvent and unable to provide relief to any of its employees for violations of the FLSA or NYLL.

34.     MATSU FUSION RESTAURANT INC. d/b/a Matsu Japanese Fusion warranted falsely and willfully, with the purpose of inducing J & J ASIAN BISTRO INC. d/b/a Matsu

Japanese Fusion to purchase its assets, that at the time of the sale, it was free and clear of all liens, morgages, security interests, levies, debts, taxes, or other claims or encumberances.

35.     In fact, the judgment in *Matsu I* would not be fully paid until December 15, 2019, more than 9 months after the transaction.

36.     After the transaction, J & J ASIAN BISTRO INC. d/b/a Matsu Japanese Fusion continued to operate Matsu Japanese Fusion, with no pause in operations.

37.     J & J ASIAN BISTRO INC. d/b/a Matsu Japanese Fusion continued to operate Matsu Japanese Fusion out of 411 E 70th Street, New York, NY 10021.

38.     J & J ASIAN BISTRO INC. d/b/a Matsu Japanese Fusion continued to employ substantially the same individuals as were employed by MATSU FUSION RESTAURANT INC. d/b/a Matsu Japanese Fusion at the time of the transaction, including but not limited to the head deliveryman Yuanshen Chen, a sushi chef known to Plaintiffs as "Daniel,"a sushi chef known to Plaintiffs as "A Yu" or "Mr. Yu," a sushi chef known to Plaintiffs as "Xiao Di" or "Little Brother," a sushi chef known to Plaintiffs as "A Pang" or "Mr. Fat," a stir-fry cook and head of the kitchen known to Plaintiffs as "Brother Lin" and "Brother Liang," a stir-fry cook known to Plaintiffs as "Mei Guo Meng" or "American Dream," a deep-fry cook and ingredient preparer known to Plaintiffs as "A Li" or "Mr. Li," a dishwasher known to Plaintiffs as "Amigo," another dishwasher whose is unknown to Plaintiffs but who is known to Plaintiffs to have been Indonesian, a cashier known to Plaintiffs as "Jessica," a cashier known to Plaintiffs as "Thai Sister," a packer whose name is unknown to Plaintiffs but who is known to Plaintiffs to have been Fuzhounese, a waitress known to Plaintiffs as "Joyce," a waitress known to Plaintiffs as "Amy," a waiter known to Plaintiffs as "Xiao Di" or "Little Brother," and a waiter whose name is unknown to Plaintiffs but who is known to Plaintiffs to have been from the south of China.

39.     J & J ASIAN BISTRO INC. d/b/a Matsu Japanese Fusion continued to employ substantially the same individuals as managers and supervisors as were employed by MATSU FUSION RESTAURANT INC. d/b/a Matsu Japanese Fusion, includning but not limited to MEI FONG CHAN herself as head waitress, Yuanshen Chen as head deliveryman, and Plaintiffs as "Brother Lin"/"Brother Liang" as head chef.

40.     J & J ASIAN BISTRO INC. d/b/a Matsu Japanese Fusion continued to utilize its employees in the substantially the same roles in which they had been utilized by MATSU FUSION RESTAURANT INC. d/b/a Matsu Japanese Fusion, including as delivery people, packers, servers, stir-fry cooks, deep-fry cooks, and sushi chefs.

41.     J & J ASIAN BISTRO INC. d/b/a Matsu Japanese Fusion continued to utilize substantially the same equipment and materials as utilized by MATSU FUSION RESTAURANT INC. d/b/a Matsu Japanese Fusion, which it had purchased for that purpose.

42.     J & J ASIAN BISTRO INC. d/b/a Matsu Japanese Fusion continued to serve substantially the same menu of dishes by MATSU FUSION RESTAURANT INC. d/b/a Matsu Japanese Fusion.

### *Wage and Hour Claims*

43.     Defendants committed the following alleged acts knowingly, intentionally and willfully against the Plaintiffs, the Collective, and the Class.

44.     At all times relevant to this lawsuit, the Defendants took steps to ascertain the provisions of the FLSA and NYLL, but intentionally failed to comply.

45.     At all times relevant to this lawsuit, the Defendants paid Plaintiffs at rates that amounted to less than the applicable minimum wage in New York, and indeed less than the applicable minimum wage in New York minus the maximum applicable tip credit.

46.     At all times relevant to this lawsuit, the Defendants knew of the requirements in

Sections 146-2.2 of the Wage Order and Section 203(m) of the FLSA that employees be notified of credits taken against the minimum wage, in writing pursuant to the Wage Order.

47.     At all times relevant to this lawsuit, the Defendants failed to provide such notice to Plaintiffs.

48.     After about May 19, 2016, Defendants began providing Plaintiffs with paystubs (from MATSU FUSION RESTAURANT INC. d/b/a Matsu Japanese Fusion through on or about June 21, 2018, and from Apex Japanese Restaurant Inc thereafter) for two-week pay periods, which drastically under-recorded their hours worked over the two-week pay period—a range of 8 to 80 hours over the two-week period, with a median of 36 hours over the two-week period.

49.     Throughout the period relevant to this lawsuit, Defendants did not maintain a time clock or other time recording system. The hours shown on the paystubs were simply fabricated.

50.     These same paystubs purported to show regular wage rates and amounts paid that bore no resemblance to what Plaintiffs were actually paid, and did not contain a notice of tip credit, but purported to show regular rates that would have been equal to the applicable New York minimum wage minus the tip credit.

51.     Defendants kept no records of Plaintiffs' time worked day by day and week by week, and kept false and misleading records of Plaintiffs' time worked and wages paid pay period by pay period.

52.     Throughout their employments, Defendants deprived Plaintiffs of overtime and spread-of-hours premiums.

53.     Throughout their employments, Plaintiffs were not exempt from the requirements of the FLSA and the Wage Order to pay overtime.

54.     Defendants did not present Plaintiffs with written wage notices at time of hire or

any time thereafter.

55.     Defendants did not post the notices required by the Wage Order at the restaurant.

56.     Throughout the period relevant to this lawsuit, Defendants employed in excess of 10 employees.

**_Plaintiff GUANGFU CHEN_**

57.     From on or about March 24, 2015 through on or about March 3, 2019, Plaintiff GUANGFU CHEN was employed by Defendants to work as a delivery person at Matsu Japanese Fusion, located at 411 E 70th St, New York, NY 10021.

58.     Defendants did not give Plaintiff GUANGFU CHEN a wage notice at his time of hire, or any other time thereafter.

59.     Defendants did not inform Plaintiff GUANGFU CHEN that they were taking a tip credit against his wages, either verbally or in writing, at his time of hire, or any other time thereafter.

60.     Plaintiff GUANGFU CHEN took a leave of absence from on or about December 10, 2015 through on or about May 2, 2016.

61.     From on or about March 24, 2015 through on or about December 31, 2018 (excluding from on or about December 10, 2015 through on or about May 2, 2016), Plaintiff GUANGFU CHEN was scheduled to work, alternating weeks:

    a.     From 10:30 through 23:00 5 days per week and from 11:00 through 23:00 1 day per week, with meal breaks at about (but not exactly) 15:00 and 22:00 each day, lasting between 10 and 15 minutes each, for a total of 74.50 hours; and

    b.     From 10:30 through 23:00 5 days per week and from 17:30 through 21:30 1 day per week, with meal breaks at about (but not exactly) 15:00 and 22:00 each day, lasting between 10 and 15 minutes each, for a total of 66.50 hours.

62.     Therefore, from on or about March 24, 2015 through on or about December 31,

2018 (excluding from on or about December 10, 2015 through on or about May 2, 2016), Plaintiff GUANGFU CHEN was scheduled to work on average 70.50 hours.

63.    On or about January 1, 2019, Defendants instituted a three-shift system: early, middle, and late.

64.    Upon information and belief, the three-shift system was instituted in response to *Matsu I* and was designed to ensure no employee worked more than 40 hours per week.

65.    Plaintiff GUANGFU CHEN does not recall exactly when each shift began and ended.

66.    However, from on or about January 1, 2019 through on or about March 3, 2019, whichever shift he worked, Plaintiff GUANGFU CHEN was scheduled to work 9.00 hours per day (a spread of 10.50 hours with a 1.50-hour break in the middle of the shift) 4 days per week, and 4 hours per day 1 day per week, for a total of 40 hours per week.

67.    From on or about March 24, 2015 through March 31, 2015, Plaintiff GUANGFU CHEN was not paid any wages.

68.    From April 1, 2015 through June 30, 2018 (excluding from on or about December 10, 2015 through on or about May 2, 2016), Plaintiff GUANGFU CHEN was paid at a rate of $1,100.00 per month.

69.    From July 1, 2018 through December 31, 2018, Plaintiff GUANGFU CHEN was paid at a rate of $1,200.00 per month.

70.    From January 1, 2019 through on or about March 3, 2019, Plaintiff GUANGFU CHEN was paid at a rate of $90.00 per full day and $45.00 per half-day.

71.    From the start of the period relevant to this lawsuit through December 31, 2018, Plaintiff GUANGFU CHEN's pay rate amounted to less than the federal minimum wage.

72.    Throughout his employment, Plaintiff GUANGFU CHEN's pay rate amounted to less than the applicable New York minimum wage.

73.    From on or about May 2, 2016 through December 31, 2018, Plaintiff GUANGFU CHEN's pay rate amounted to less than the applicable New York minimum wage minus the maximum applicable tip credit.

74.    Throughout his employment, Defendants did not pay Plaintiff GUANGFU CHEN for hours worked in excess of 40 per week.

75.    Throughout his employment, Defendants did not pay Plaintiff GUANGFU CHEN an overtime premium or a spread-of-hours premium.

76.    From on or about March 24, 2015 through on or about December 10, 2015, Defendants did not furnish Plaintiff GUANGFU CHEN with wage statements with each payment of wages.

77.    From on or about May 2, 2016 through on or about March 3, 2019, Defendants furnished Plaintiff GUANGFU CHEN with fortnightly wage statements that underreported his hours and erroneously reported that Plaintiff GUANGFU CHEN was paid at an hourly rate (which amounted to less than the New York minimum wage) rather than his true monthly or daily rates.

### *Plaintiff PEIZHENG FAN*

78.    From on or about August 25, 2015 through on or about July 31, 2017, Plaintiff PEIZHENG FAN was employed by Defendants to work as a delivery person at Matsu Japanese Fusion, located at 411 E 70th St, New York, NY 10021.

79.    Defendants did not give Plaintiff PEIZHENG FAN a wage notice at his time of hire, or any other time thereafter.

80.    Defendants did not inform Plaintiff PEIZHENG FAN that they were taking a tip credit against his wages, either verbally or in writing, at his time of hire, or any other time thereafter.

81.     Throughout his employment, Plaintiff PEIZHENG FAN was scheduled to work, alternating weeks:

a.      From 10:30 through 23:00 5 days per week and from 11:00 through 23:00 1 day per week, with meal breaks at about (but not exactly) 15:00 and 22:00 each day, lasting between 10 and 15 minutes each, for a total of 74.50 hours; and

b.      From 10:30 through 23:00 5 days per week and from 17:00 through 23:00 1 day per week, with meal breaks at about (but not exactly) 15:00 and 22:00 each day, lasting between 10 and 15 minutes each, for a total of 68.50 hours.

82.     Therefore, throughout his employment, Plaintiff PEIZHENG FAN was scheduled to work on average 71.50 hours.

83.     From on or about August 25, 2015 through August 31, 2015, Plaintiff PEIZHENG FAN was not paid any wages.

84.     From September 1, 2015 through on or about July 31, 2017, Plaintiff PEIZHENG FAN was paid at a rate of $1,100.00 per month.

85.     From the start of the period relevant to this lawsuit through on or about July 31, 2017, Plaintiff PEIZHENG FAN's pay rate amounted to less than the federal minimum wage.

86.     Throughout his employment, Plaintiff PEIZHENG FAN's pay rate amounted to less than the applicable New York minimum wage.

87.     From December 31, 2015 through on or about July 31, 2017, Plaintiff PEIZHENG FAN's pay rate amounted to less than the applicable New York minimum wage minus the maximum applicable tip credit.

88.     Throughout his employment, Defendants did not pay Plaintiff PEIZHENG FAN for hours worked in excess of 40 per week.

89.     Throughout his employment, Defendants did not pay Plaintiff PEIZHENG FAN an overtime premium or a spread-of-hours premium.

90.     Throughout his employment, Defendants furnished Plaintiff PEIZHENG FAN with fortnightly wage statements that underreported his hours and erroneously reported that Plaintiff PEIZHENG FAN was paid at an hourly rate (which amounted to less than the New York minimum wage) rather than his true monthly rate.

## COLLECTIVE ACTION ALLEGATIONS

91.     Plaintiffs bring this action individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants from April 14, 2017 through entry of judgment in this case (the "Collective Period") and who were not compensated at or above the federal minimum wage for all hours worked and at one and one half times the higher of their regular rates or the federal minimum wage for all hours worked in excess of 40 hours per week (the "Collective").

## CLASS ACTION ALLEGATIONS

92.     Plaintiffs bring their NYLL claims pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all non-exempt personnel employed by Defendants on or after April 14, 2014 (the "Class Period").

93.     All said persons, including Plaintiffs, are referred to herein as the "Class."

94.     The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Rule 23.

*Numerosity*

95.     The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a Class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than 40 members of the class.

*Commonality*

96.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

        a.      Whether Defendants employed Plaintiffs and the Class within the meaning of the New York law;

        b.      Whether Plaintiffs and the Class were paid at or above the applicable New York minimum wage;

        c.      Whether Plaintiffs and the Class were paid, and were paid overtime premiums, for hours worked per week in excess of 40;

        d.      Whether Plaintiffs and the Class were paid spread-of-hours premiums for days when their spreads of hours exceeded 10 hours;

        e.      Whether Defendants kept and maintained adequate employment records for the Plaintiffs and the Class pursuant to the Regulations and the Wage Order;

        f.      Whether Defendants provided Plaintiffs and the Class with wage notices at their times of hiring or thereafter;

        g.      Whether Defendants provided Plaintiffs and the Class with adequate and accurate wage statements with each payment of wages;

        h.      Whether Defendants provided Plaintiffs and the Class with adequate notice

of tip and other credits taken against the minimum wage;

i.     At what common rate, or rates subject to common method of calculation were and are Defendants required to pay the Class.

*Typicality*

97.     Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage or overtime. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

*Adequacy*

98.     Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in representing plaintiffs in both class action and wage-and-hour employment litigation cases.

*Superiority*

99.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the

losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

100.    Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## **STATEMENT OF CLAIMS**

### **COUNT I.**
**[Violations of the Fair Labor Standards Act—Failure to Pay Minimum Wage**
**Brought on behalf of the Plaintiff  and the FLSA Collective]**

101.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

102.    At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiffs, and the Collective, at least minimum wage, for some or all of the hours they worked.

103.    Section 216 of the FLSA provides that any employer who violates the provisions of Section 206 of the FLSA shall be liable to the employees affected in the amount of their unpaid wage, and in an additional equal amount as liquidated damages.

104.    Defendants knowingly, willfully, and in bad faith disregarded the provisions of the FLSA as evidenced by failure to post notices required by Section 516.4 of the Regulations, and by fabricating paystubs with false hourly wage rates and hours worked per pay period, when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and the Collective.

### COUNT II.
**[Violation of New York Labor Law—Failure to Pay Minimum Wage
Brought on behalf of Plaintiff and Rule 23 Class]**

105.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

106.    At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiffs, and the Class, at least the applicable New York minimum wage for all hours worked.

107.    Section 198 of the NYLL provides that any employer who violates the provisions of Section 191 of the NYLL shall be liable to the employees affected in the amount of their unpaid wage, and in an additional equal amount as liquidated damages, and interest.

108.    Defendants knowingly, willfully, and in bad faith disregarded the provisions of the NYLL as evidenced by failure to post notices required by Section 146-2.4 of the Wage Order, and by fabricating paystubs with false hourly wage rates and hours worked per pay period, when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and the Class.

## COUNT III.
### [Violations of the Fair Labor Standards Act—Failure to Pay Overtime
### Brought on behalf of the Plaintiff and the FLSA Collective]

109.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

110.    At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiffs, and the Collective, overtime premiums, for hours that they worked in excess of 40 per week.

111.    Section 207 of the FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he is employed, or one and one-half times the minimum wage, whichever is greater.

112.    Defendants knowingly, willfully, and in bad faith disregarded the provisions of the FLSA as evidenced by failure to post notices required by Section 516.4 of the Regulations, and by fabricating paystubs with false hourly wage rates and hours worked per pay period, when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and the Collective.

## COUNT IV.
### [Violation of New York Labor Law—Failure to Pay Overtime
### Brought on behalf of Plaintiff and Rule 23 Class]

113.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

114.    At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiffs, and the Class, for hours that they worked in excess of 40 per week, including overtime premiums.

115.    Section 198 of the NYLL provides that any employer who violates the provisions

of Section 191 of the NYLL (incorporating Section 146-1.4 of the Wage Order) shall be liable to the employees affected in the amount of their unpaid wage, and in an additional equal amount as liquidated damages, and interest.

116.    Section 146-1.4 of the Wage Order provides that no employer shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he is employed, or one and one-half times the minimum wage, whichever is greater.

117.    Defendants knowingly, willfully, and in bad faith disregarded the provisions of the NYLL and the Wage Order as evidenced by failure to post notices required by Section 146-2.4 of the Wage Order, and by fabricating paystubs with false hourly wage rates and hours worked per pay period, when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and the Collective.

### COUNT V.
**[Violation of New York Labor Law—Spread of Time Pay**
**Brought on behalf of Plaintiff and Rule 23 Class]**

118.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

119.    At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiffs, and the Class, an extra hour's pay at the minimum wage for days when their spreads of hours exceeded 10 hours.

120.    Section 198 of the NYLL provides that any employer who violates the provisions of Section 191 of the NYLL (incorporating Section 146-1.6 of the Wage Order) shall be liable to the employees affected in the amount of their unpaid wage, and in an additional equal amount as liquidated damages, and interest.

121.    Section 146-1.6 of the Wage Order provides that no employer shall employ a cov-ered employee for a work day with a spread of hours greater than 10 hours unless such employee receives compensation for same at a rate not less than one hour's pay at the applicable New York minimum wage.

122.    Defendants knowingly, willfully, and in bad faith disregarded the provisions of the NYLL and the Wage Order as evidenced by failure to post notices required by Section 146-2.4 of the Wage Order, and by fabricating paystubs with false hourly wage rates and hours worked per pay period, when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and the Collective.

## COUNT VI.
### [Violation of New York Labor Law—Failure to Provide Time of Hire Wage Notice Brought on behalf of Plaintiff and Rule 23 Class]

123.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

124.    At all relevant times, Defendants had a policy and practice of refusing to furnish Plaintiffs, and the Class, with a written wage notice compliant with Section 195.1 of the NYLL.

125.    Section 198 of the NYLL provides that any employer who violates the provisions of Section 195 of the NYLL shall be liable to the employees affected in the lesser of $50.00 times the number of days the violation occurred, or $5,000.00.

126.    Defendants knowingly, willfully, and in bad faith disregarded the provisions of the NYLL as evidenced by failure to post notices required by Section 146-2.4 of the Wage Order, and by fabricating paystubs with false hourly wage rates and hours worked per pay period, when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and the Collective.

## COUNT VII.
### [Violation of New York Labor Law—Failure to Provide Wage Statements
### Brought on behalf of Plaintiff and Rule 23 Class]

127.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

128.    At all relevant times, Defendants had a policy and practice of refusing to furnish Plaintiffs, and the Class, with accurate wage statements compliant with Section 195.3 of the NYLL with each payment of wages.

129.    Section 198 of the NYLL provides that any employer who violates the provisions of Section 195 of the NYLL shall be liable to the employees affected in the lesser of $250.00 times the number of days the violation occurred, or $5,000.00.

130.    Defendants knowingly, willfully, and in bad faith disregarded the provisions of the NYLL as evidenced by failure to post notices required by Section 146-2.4 of the Wage Order, and by fabricating paystubs with false hourly wage rates and hours worked per pay period, when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and the Collective.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, and on the behalf of the Collective and Class, respectfully request that this Court enter a judgment providing the following relief:

a)    Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of his right to join this lawsuit if they believe they were denied premium overtime wages;

b)      Certification of this case as a collective action pursuant to FLSA;

c)      Issuance of notice pursuant to Section 216(b) of the FLSA to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to Section 216(b) of the FLSA, and appointing Plaintiff and their counsel to represent the Collective;

d)      A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

e)      An injunction against Corporate Defendants, their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)      An award of unpaid minimum wages, overtime premiums, and spread-of-hours premiums due under FLSA and NYLL to Plaintiffs and the Collective and Class plus liquidated damages;

g)      Up to $5,000.00 per Plaintiff for Defendants' failure to furnish a wage notice compliant with Section 195.1 of the NYLL at time of hire;

h)      Up to $5,000.00 per Plaintiff for Defendants' failure to furnish a paystub compliant with Section 195.3 of the NYLL with each payment of wages;

i)      An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to Section 216(b) of the FLSA and Sections 198 and 663 of the NYLL;

j)      The cost and disbursements of this action;

k)      An award of prejudgment and post-judgment fees;

l)      Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by Section 198.4 of the NYLL; and

m)      Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) and 38(c) of the Federal Rules of Civil Procedures, Plaintiffs demand a trial by jury on all questions of facts.

Dated: Flushing, New York
       May 7, 2020

TROY LAW, PLLC
*Attorneys for the Plaintiffs, proposed FLSA Collective and potential Rule 23 Class*

*/s/ John Troy*
John Troy (JT0481)
Aaron Schweitzer (AS 6369)