UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                             :

GUANGCHENG CHEN, et al.,               :

                             :

                Plaintiffs,         :

                             :         19-CV-11895 (JMF)

      -v-                  :

                             :       <u>OPINION AND ORDER</u>

MATSU FUSION RESTAURANT INC, et al.,  :

                             :

               Defendants.     :

                             :
-----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Guangfu Chen and Peizheng Fan bring this putative class and collective action against

Matsu Fusion Restaurant, Inc. ("Matsu Fusion"), J & J Asian Bistro, Inc. ("J & J"), Yi Chang

Chen ("Gary Chen"), and Mei Fong Chan ("Chan").  Plaintiffs, who were delivery drivers at

Matsu Japanese Fusion ("the Restaurant") from March 2015 to March 2019, allege that

Defendants failed to pay both minimum wage and overtime premiums in violation of the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and New York Labor Law ("NYLL"),

N.Y. Lab. Law § 650 *et seq.*  ECF No. 27 ("Compl."), ¶¶ 2-4.  During the relevant period, Gary

Chen was the sole owner of Matsu Fusion, which owned the Restaurant.  *Id.* ¶ 16.  Chan was the

Restaurant's head waitress and part owner of Apex Japanese Restaurant, which made an

unsuccessful bid to take over the Restaurant in July 2018.  *Id.* ¶¶ 20-24.  On or about March 21,

2019 — after the alleged conduct underlying this suit — Matsu Fusion sold the Restaurant to J &

J, which is wholly owned by Chan.  *Id.* ¶¶ 20, 32.  Plaintiffs bring claims against Matsu Fusion,

Gary Chen, and Chan on the ground that they qualified as employers subject to the FLSA and

NYLL, *id.* ¶¶ 19, 25, and against J & J on a successor liability theory, *id.* ¶¶ 26-42.

Chan and J & J (the "Moving Defendants") now bring two motions.  First, they move to disqualify Plaintiffs' attorney, John Troy ("Troy"), and his firm Troy Law, PLLC, from representing Plaintiffs in this case.  *See* ECF No. 28.  Second, they move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss.  *See* ECF No. 29.  For the reasons that follow, the motion to disqualify counsel is DENIED, and the motion to dismiss is GRANTED as to the claims against Chan and DENIED as to the claims against J & J.

## MOTION TO DISQUALIFY COUNSEL

Moving Defendants' motion to disqualify derives from the fact that Troy — Plaintiffs' counsel — represented Chan and her husband in an unrelated real estate transaction in 2008.  *See* ECF No. 28-6 ("Defs.' Disqualification Mem."), at 1-2; ECF No. 47 at 2.  The power to disqualify an attorney is derived from a court's "inherent power to preserve the integrity of the adversary process," *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (internal quotation marks omitted), and the decision to do so is "a matter committed to the sound discretion of the district court," *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994).  As the Second Circuit has observed, "[d]isqualification has been ordered only in essentially two kinds of cases: (1) where an attorney's conflict of interests . . . undermines the court's confidence in the vigor of the attorney's representation of his client, or more commonly (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation."  *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764-65 (2d Cir. 1990) (internal quotation marks and alterations omitted).  Significantly, such motions are viewed with disfavor because they "are often interposed for tactical reasons, and . . . even when made in the best of faith, [they] inevitably cause delay."  *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 792 (2d Cir. 1983) (internal quotation marks omitted); *accord Murray v. Metro. Life Ins.*

*Co.*, 583 F.3d 173, 178 (2d Cir. 2009); *see also, e.g.*, *Arista Records LLC v. Lime Grp. LLC*, No. 06-CV-5936 (KMW), 2011 WL 672254, at *4 (S.D.N.Y. Feb. 22, 2011) (describing disqualification as "a drastic measure that is viewed with disfavor in this Circuit" (internal quotation marks omitted)).  Thus, while "any doubts are to be resolved in favor of disqualification, the party seeking disqualification bears a heavy burden of demonstrating that disqualification is necessary."  *Decker v. Nagel Rice LLC*, 716 F. Supp. 2d 228, 231-32 (S.D.N.Y. 2010).

In evaluating the motion, the Court may consult the disciplinary rules of the American Bar Association and New York State, but such rules are not binding.  *See, e.g.*, *Hempstead Video*, 409 F.3d at 132; *Falk v. Gallo*, 901 N.Y.S.2d 99, 100 (2d Dep't 2010).  Moreover, "not every violation of a disciplinary rule will necessarily lead to disqualification." *Hempstead Video*, 409 F.3d at 132; *accord Falk*, 901 N.Y.S.2d at 100.  Instead, "[d]isqualification is only warranted in the rare circumstance where an attorney's conduct 'poses a significant risk of trial taint.'"  *Decker*, 716 F. Supp. 2d at 231 (quoting *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981)).  According to the New York Rules of Professional Conduct, "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a *substantially related* matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."  N.Y. Rules of Pro. Conduct 1.9(a) (emphasis added).  Tracking the Rule, the Second Circuit has held that where, as here, a former client moves to disqualify opposing counsel, disqualification may be warranted if "(1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; *and* (3) the

attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client." *Hempstead Video*, 409 F.3d at 133 (emphasis added) (quoting *Evans*, 715 F.2d at 791).

Here, there is no dispute that Chan (and her husband) were represented by Troy in connection with the 2008 real estate transaction. Moreover, given that representation, the Court will assume that confidences were disclosed to Troy. *See Chinese Auto. Distribs. of Am. LLC v. Bricklin*, No. 07-CV-4113 (LLS), 2009 WL 47337, at *2 (S.D.N.Y. Jan. 8, 2009). Thus, the critical question is whether there is a "substantial relationship" between the subject matter of Troy's prior presentation and the issues in the present suit. *Hempstead Video*, 409 F.3d at 133. "A 'substantial relationship' exists where facts pertinent to the problems underlying the prior representation are relevant to the subsequent representation." *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 239 (2d Cir. 2016). Thus, the "substantial relationship" inquiry turns on "whether the successive representations share common material factual issues." *Giambrone v. Meritplan Ins. Co.*, 117 F. Supp. 3d 259, 272 (E.D.N.Y. 2015); *see also* N.Y. Rules of Pro. Conduct 1.9 cmt. 3 ("Matters are 'substantially related' for purposes of [Rule 1.9] if they involve the same transaction or legal dispute."). Although it is possible for "general legal representation" to satisfy the "substantial relationship" test, that is appropriate only when "the later litigation fairly puts in issue the entire background of the movant." *U.S. Football League v. Nat'l Football League*, 605 F. Supp. 1448, 1459 (S.D.N.Y. 1985).

Applying these standards here, the Court concludes that there is no basis to disqualify Troy or his firm. Notably, Moving Defendants do not even attempt to assert that a "substantial relationship" exists between Troy's previous representation of Chan and the current litigation. Instead, they rest exclusively on the concept of "general" legal representation. Defs.'

Disqualification Mem. 5.  But, whatever access Troy may have had to Chan's personal information in connection with the 2008 real estate transaction, his work on that discrete matter more than a decade ago does not come close to what would qualify as "general legal representation" for purposes of disqualification.  *See, e.g.*, *U.S. Football League*, 605 F. Supp. at 1453-56 (finding that a firm had provided "general legal representation" to a client by helping the client solicit franchise owners, develop a league structure, and negotiate stadium leases); *see also, e.g.*, *Med. Diagnostic Imaging, PLLC v. CareCore Nat'l, LLC*, 542 F. Supp. 2d 296, 313 (S.D.N.Y. 2008) (observing that a client's entire background is not at issue in a case for purposes of disqualification when the client's finances "are not directly at issue in the current litigation"); *Scantek Med., Inc. v. Sabella*, 693 F. Supp. 2d 235, 240 (S.D.N.Y. 2008) (suggesting that "general representation" involves representation that is extensive enough for movant's "entire background [to] have been disclosed to [the firm]" and finding that a firm's prior representation of the movant on five discrete issues did not rise to the level of "general representation").[1]

In short, Chan's prior dealings with Troy do not rise to the level of "general legal representation."  *U.S. Football League*, 605 F. Supp. at 1459.  It follows that Moving Defendants do not carry their "heavy burden of demonstrating that disqualification is necessary," *Decker*, 716 F. Supp. 2d at 232, and their motion must be denied.

---

[1]     Separately, Moving Defendants cite the fact that the claims against Chan were voluntarily discontinued and later reasserted to suggest impropriety.  *See* Defs.' Disqualification Mem. 1-2, 6.  They assert that "Mr. Troy agreed to discontinue the pleadings against Chan upon realizing that Chan was his previous client" and that "[t]he voluntary discontinuance indicated that Mr. Troy recognized that there were conflict[s of] interest[]" involved in prosecuting this case.  *Id.* at 6.  But they provide no evidence to substantiate that assertion.  And, even if they did, it would not affect the Court's analysis or conclusion.

## MOTION TO DISMISS

Next, Chan and J & J each move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  In evaluating these motions, the Court must accept all facts set forth in the Amended Complaint as true and draw all reasonable inferences in Plaintiffs' favor.  *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam).[2]  A claim will survive a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555.  If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Id.* at 570.

Applying these standards here, the Court concludes that Chan's motion to dismiss — on the ground that she was not an "employer" for purposes of the FLSA or NYLL during the

---

[2]    Moving Defendants argue that the Court should rely on facts pleaded in Plaintiffs' original complaint, not the Amended Complaint, because the latter conflicts with the former.  *See* ECF No. 29-2 ("Defs.' Dismissal Mem."), at 5 (citing *Colliton v. Cravath, Swaine & Moore*, No. 08-CV-0400 (NRB), 2008 WL 4386764, at *13 (S.D.N.Y. Sept. 24, 2008)).  But even if there are inconsistencies, that remedy is disfavored.  *See, e.g.*, *Perdomo v. 113-117 Realty, LLC*, 18-CV-9860 (VB), 2019 WL 6998621, at *3 (S.D.N.Y. 2019) ("[T]he more usual and benevolent option is to accept the superseded pleadings but allow the factfinder to consider the earlier pleadings as admissions in due course.").  Moreover, several of the alleged inconsistencies — for instance, with respect to "the correct DBA name of Matsu Fusion Restaurant" and the dates that Plaintiff Chen was employed and took leaves of absence, *see* Defs.' Dismissal Mem. 5-7 — are irrelevant to the motion to dismiss.  Accordingly, the Court relies on the facts alleged in the Amended Complaint.

relevant time, *see Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) — must be granted. The FLSA defines "[e]mployer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Given this broad definition, the Second Circuit uses a four-part "economic reality" test to assess whether an entity or person functions as that plaintiff's employer. *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 66-67 (2d Cir. 2003). The Court considers whether the defendant "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Herman*, 172 F.3d at 139. "[T]he overarching concern is whether the alleged employer possessed the power to control the workers in question." *Id.*

Even viewed in the light most favorable to Plaintiffs, *see Burch*, 551 F. 3d 124, the Amended Complaint fails to plead sufficient facts to show that Chan was Plaintiffs' employer under the foregoing standards. Plaintiffs correctly recite the "economic reality" test. *See* Compl. ¶ 20. But their conclusory recitation of the legal standard aside, Plaintiffs plead only two facts in support of their claim that Chan was their employer under the FLSA and NYLL at the times relevant to their claims: first, that she was one of several owners of Apex Japanese Restaurant, which made an unsuccessful attempt to purchase the Restaurant; and second, that she "was a manager and supervisor of the waitstaff at [the Restaurant], customarily directing the work of about 4 or 5 servers." *Id.* ¶¶ 21-23. These allegations are insufficient on their own terms to state a plausible claim against Chan. *See, e.g.*, *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 311 (S.D.N.Y. 2011) (noting that stock ownership, in and of itself, is not sufficient to convert a shareholder into an employer for purposes of the FLSA and citing cases); *see also Oppenheimer & Co. v. Trans Energy, Inc.*, 946 F. Supp. 2d 343, 347 (S.D.N.Y. 2013) (stating

that "mere conclusory statements" cannot suffice to defeat a motion to dismiss (internal quotation marks omitted)).  They are all the more insufficient because Plaintiffs were delivery drivers who did not even report to Chan.  *See* Compl. ¶¶ 7-8.  Accordingly, the motion to dismiss must be and is granted as to the claims against Chan.

By contrast, J & J's motion must be denied.  It is undisputed that J &J purchased the Restaurant after Plaintiffs' alleged injuries arose.  *See* Compl. ¶¶ 32, 57, 78.  For J & J to face liability, therefore, Plaintiffs must overcome the presumption that, "[u]nder both New York law and traditional common law, a corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities."  *New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 209 (2d Cir. 2006).  In the FLSA context, courts look "to 'whether the new company has acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations.'"  *Battino v. Cornelia Fifth Ave., LLC*, 861 F. Supp. 2d 392, 404 (S.D.N.Y. 2012) (quoting *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 43 (1987)).  That typically involves consideration of at least three factors: (1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; and (3) whether there has been a substantial continuity of business operations.  *See Xue Ming Wang v. Abumi Sushi Inc.*, 262 F. Supp. 3d 81, 89-90 (S.D.N.Y. 2017); *Battino*, 861 F. Supp. 2d at 404.[3]

Here, consideration of these factors makes plain that Plaintiffs state a plausible claim.  First, the Amended Complaint suggests that J & J had actual or constructive notice of potential

---

[3]      Courts have relied on a handful of other factors, but they are "essentially a subset of factors to consider in determining whether there was substantial continuity of business operations."  *Battino*, 861 F. Supp. 2d at 404 (internal quotation marks omitted).  Accordingly, the Court need not and does not discuss them here.

FLSA and NYLL claims against the Restaurant.  Chan is the sole owner of J & J, *see* Compl. ¶ 20, so her knowledge can be imputed to J & J.  *See Baker v. Latham Sparrowbush Associates*, 72 F.3d 246, 255 (2d Cir. 1995).  Based on the facts in the Amended Complaint, it is plausible that Chan had actual notice of potential liability through her supervisory position as head waitress, *see* Compl. ¶ 20-21, or as part-owner of Apex Japanese Restaurant, which provided Plaintiffs with pay stubs during a failed takeover bid in July 2018, *see id*. ¶¶ 22-24.  Even absent actual notice, the fact that J & J purchased the Restaurant for only ten dollars, *see id.* ¶ 32, allows the Court to "impute constructive notice" to J & J for "fail[ing] to exercise due diligence to discover labor violations," *Hidalgo v. New Ichiro Sushi, Inc.*, No. 15-CV-414 (AJN), 2017 WL 4712789, at *13 (S.D.N.Y. 2017) (internal quotations omitted).

Second, Plaintiffs plead facts from which the Court may infer that Matsu Fusion is incapable of providing relief.  Plaintiffs contend that the ten-dollar sale of the Restaurant to J & J left Matsu Fusion insolvent, *see* Compl. ¶ 33, and, in support of that contention, they note the fact that it took nine months for Matsu Fusion to pay out a settlement from an earlier employee lawsuit, *see id.* ¶ 35.  Finally, Plaintiffs plead sufficient facts to show a substantial continuity of business operations.  According to the Amended Complaint, J & J has continued to operate the Restaurant in the same location, *id.* ¶ 37, with substantially the same workforce, *id.* ¶ 38, with most of the previous supervisory personnel, *id.* ¶ 39, with the same machinery and equipment, *id.* ¶ 41, all the while producing the same product, *id.* ¶ 42.  Taken as true, these facts suggest that there is substantial continuity of business operations since J & J purchased the Restaurant. Plaintiffs, therefore, plead a plausible successor liability claim against J & J.

**CONCLUSION**

For the foregoing reasons, Moving Defendants' motion to disqualify is DENIED, Chan's motion to dismiss is GRANTED, and J & J's motion to dismiss is DENIED.  J & J shall file its answer **within two weeks of the date of this Opinion and Order**.  Additionally, per ECF No. 51, Defendants shall file any opposition to Plaintiffs' motion for conditional certification no later than **two weeks of the date of this Opinion and Order**.  Plaintiffs shall file any reply no later **than one week thereafter**.  That said, before Defendants file their opposition, counsel should confer with respect to whether Defendants would be willing to consent to preliminary certification, mindful of the fact that the standard for preliminary certification is relatively low and that, after discovery (when the standard is higher), Defendants may move for decertification. *See, e.g.*, *Davis v. Abercrombie & Fitch Co.*, No. 08 Civ. 1859 (PKC), 2008 WL 4702840, at *10 (S.D.N.Y. Oct. 23, 2008); *see also, e.g.*, *Ack v. Manhattan Beer Distribs., Inc.*, No. 11-CV-5582 (CBA), 2012 WL 1710985, at *6 (E.D.N.Y. May 15, 2012) ("[W]hether the plaintiff or any putative plaintiffs are exempt or otherwise excluded from the FLSA is not a proper inquiry for the court at the collective action certification stage.  Such factual determinations should be addressed at the second stage of the certification process after the completion of discovery." (alterations and internal quotation marks omitted)).  If Defendants consent to conditional certification, the parties shall promptly advise the Court by joint letter.

To the extent that the parties believe that a settlement conference in advance of a ruling on the motion for conditional certification would be useful, they should contact the Chambers of Magistrate Judge Netburn (to whom the Court has already referred this case for settlement) and shall advise the Court that they are doing so by joint letter.  The Court will schedule an initial pretrial conference once the conditional certification motion is resolved.

The Clerk of Court is directed to terminate Chan as a Defendant and ECF Nos. 28 and 29.

SO ORDERED.

Dated: October 16, 2020
       New York, New York
_____
JESSE M. FURMAN
United States District Judge