**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____X

GUANGFU CHEN, and
PEIZHENG FAN
*on behalf of themselves and others similarly situated,*

        *Plaintiff,*

-against-

                                          Case No. 19-cv-11895-JMF

HIUYIN LAM
       a/k/a Hiu Yin Lam
       a/k/a Wendy Lam; and
QIXIA KUANG
       a/k/a Qi Xia Kuang
       a/k/a Jessica Kuang
MATSU FUSION RESTAURANT INC.
       d/b/a Matsu Japanese Fusion,
J & J ASIAN BISTRO INC.
       d/b/a Matsu Japanese Fusion, and
YI CHANG CHEN
       a/k/a Gary Chen

        *Defendants,*

_____X


**DEFENDANT HIUYIN LAM'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**


_____/s/Hui Chen_____
HUI CHEN, ESQ
*Attorney for Defendant(s)*
136-20 38th Ave., Suite 9E
Flushing, NY 11354
Email: hui.chen@alum.cardozo.yu.edu

## TABLE OF CONTENTS

**TABLE OF CONTENTS** ................................................................................................. ii

**TABLE OF AUTHORITIES** ........................................................................................ iii

**PRELIMINARY STATEMENT** ................................................................................... 1

**STATEMENT OF FACTS** ............................................................................................ 2

    A.  The Amended Complaint ............................................................................ 2

    B.  Lam's Affidavit. ......................................................................................... 8

**ARGUMENTS** ............................................................................................................... 9

  I.    LEGAL STANDARD ...................................................................................... 9

  II.   THE COMPLAINT DOES NOT CONTAIN ANY FACTUAL ALLEGATIONS UPON WHICH THE COURT CAN MAKE A REASONABLE INFERENCE OF LIABILITY THAT DEFENDANT HIUYIN LAM WAS AN EMPLOYER ...................................... 10

      1.  The Power to Hire and Fire Employees .................................... 12

      2.  Supervised and controlled Employee Work Schedules or Conditions of Employment ...................................................................... 13

      3.  Determined the Rate and Method of Pay ................................. 15

      4.  Maintained Employee Records ................................................. 15

  III.  TOTALITY OF CIRCUMSTANCE ............................................................. 15

**CONCLUSION** ........................................................................................................... 17

## TABLE OF AUTHORITIES

**CASES**

*Allen v. PS Brother Gourmet, Inc.*, No. 11 Civ. 5427 (AJN) (KNF),

2013 WL 11327098 (S.D.N.Y. Feb.1, 2013) .................................................................. 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................ 1, 2, 10, 15,17

*Barfield v. New York City Health and Hosp. Corp.,* 537 F.3d 132 (2d Cir. 2008).......... 11

*Bell Atl. Corp v. Twombly*, 550 U.S. 544 (2007). ............................... 1, 2, 9, 10, 12, 13, 15

*Beng Khoon Loo v. I.M.E. Restaurant, Inc.*, 17-cv-02558-ARR-RER,

2018 WL 4119234 (E.D.N.Y. Aug. 29, 2018)..................................................... 10, 13, 16

*Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1999)......... 11, 12, 13, 15

*Diaz v. Consortium for Work Educ., Inc*., 2010 U.S. Dist. Lexis 107722

(S.D.N.Y. Sep 28, 2010) .................................................................................. 11

*Gisomme v. Healthex Corp*., 2014 U.S. Dist. Lexis 67588, (E.D.N.Y. May 15, 2015) .. 11

*Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132 (2nd Cir. 1999)...................... 10 ,11, 16

*In re NYSE Specialist Sec. Litig*., 503 F.3d 89 (2d Cir. 2007)......................................... 10

*Kim v. Kum Gang, Inc.,* No. 12 CIV. 6344 (MHD),

2014 WL 12543811 (S.D.N.Y. Mar. 12, 2014) ............................................................ 16

*Marcelino v. 374 Food, Inc.*, No. 16 Civ. 6287 (KPF),

2018 WL 1517205 (S.D.N.Y. March 27, 2018). ............................................................ 11

*McGlone v. Contract Caller, Inc*., 49 F.Supp.3d 364, 374 (S.D.N.Y. 2014) ................. 14

*Olvera v. Bareburger Group LLC*, 73 F.3d 201 (S.D.N.Y. 2014)................................... 11

*Papasan v. Allain*, 478 U.S. 265 (1986) ................................................................. 10, 13

*Peng Bai v. Fu Xing Zhuo*, No.13 Civ. 05790(ILG)(SMG),

2014 WL 2645119 (E.D.N.Y. June 13, 2014) ............................................................. 15

*Sampson v. Medisys Health Network, Inc.*, 2012 U.S. Dist. Lexis 103012

(E.D.N.Y. Feb 9, 2012) ................................................................. 11

*Zheng v. Liberty Apparel Company, Inc.*, 355 F.3d 61 (2d Cir. 2003)............................ 11

**STATUTES**

New York Labor Law ......................................................................... 1

Fair Labor Standards Act .................................................................. 1

**FEDERAL RULES OF CIVIL PROCEDURE**

Federal Rule of Civil Procedure 8(a)(2) ........................................... 9

Federal Rule of Civil Procedure 12(b)(6) ..................................... 1, 9

# PRELIMINARY STATEMENT

Plaintiffs Guangfu Chen and Peizheng Fan, on behalf of themselves and others similarly situated, filed a federal action on May 27, 2021, in the United States District Court for the Southern District of New York, against defendants Hiuyin Lam and Jessica "Doe", alleging various violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). On June 11th, 2021, Plaintiffs filed an amended complaint correcting the name of Jessica "Doe" to Qixia Kuang. On July 15, 2021, the docket 21-cv-04757 was consolidated with the current docket of 19-cv-11895. On August 12, 2021 Defendant Hiuyin Lam filed a Motion to Dismiss along with an Defendant's Affidavit in Support of the Motion to Dismiss. On August 13, 2021, the Court ordered for Plaintiff to file any amended complaint by September 2, 2021, and Defendant Hiuyin Lam was provided three weeks to either (1) file an answer, (2) file a new motion to dismiss, or (3) file a letter of ECF stating that Defendant Hiuyin Lam will rely on her previously filed motion to dismiss. A Second Amended Complaint was filed by Plaintiffs on September 2, 2021. Defendant, Hiuyin Lam ("Lam"), by and through her attorney, Hui Chen & Associates, PLLC, respectfully submits this Memorandum of Law in Support of her Motion to Dismiss the Second Amended Complaint (the "2nd Amend. Compl.") of Plaintiff Guangfu Cheng and Peizheng Fan, on behalf of themselves and others similarly situated, ("Plaintiff") pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6).

A sufficiently pled complaint must do more than simply leave open a possibility that a plaintiff could prove its case; instead, the pleading must contain detail sufficient to create a reasonable expectation that discovery will surface evidence of wrongdoing. *See Bell Atl. Corp v. Twombly*, 550 U.S. 544 (2007). As it stands, this Court need not accept as true "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009). Under the standard of *Iqbal* and *Twombly*, legal conclusions should not be assumed to be true and must be discarded for purposes of assessing the factual assertions of a complaint.

In light of Defendant Lam's previous Motion to Dismiss, Plaintiff have altered their Second Amended Complaint in response, such as changing the alleged hours that Defendant Lam worked. Defendants noticed that in an attempt to survive a motion to dismiss, Plaintiffs have invented and fabricated "factual assertions" that support their original threadbare recitals of the elements of a cause of action.

Even though the definition of employer under FLSA is broad, Plaintiffs nevertheless did not adequately allege employment by Defendant Hiuyin Lam or that Hiuyin Lam exercised formal or functional control over their employment. Consequently, Plaintiffs failed to plead sufficient facts to demonstrate Hiuyin Lam was an employer within the definition of the Fair Labor Standards Act and New York Labor Law. The Amended Complaint, to the extent that it purports to state a claim as against Lam, is wholly insufficient, and erroneously and unjustly concludes Lam as Plaintiffs' employer, and Plaintiffs failed to make any specific factual allegation against Lam other than fabrications. It is implausible that Lam was an "employer" of the Plaintiff as a matter of law as the allegations against Lam were insufficient for the court to draw any reasonable reference to an "employer" status or liability.

## STATEMENT OF FACTS

### A. The Amended Complaints

On June 11, 2021, Plaintiffs filed an amended complaint. Between Paragraphs 13 and 19, Plaintiffs alleged that Defendant Lam is personally liable because she is an employer within the definition of FLSA and NYLL. The relevant allegations are as followed.

- "HIUYIN LAM a/k/a Hiu Yin Lam a/k/a Wendy Lam is a co-owner of MATSU FUSION RESTAURANT INC d/b/a Matsu Japanese Fusion with her husband Yi Chang Chen a/k/a Gary Chen, who is the Chief Executive Officer and New York Alcoholic Beverage Control principal for MATSU FUSION RESTAURANT INC d/b/a Matsu Japanese Fusion. HIUYIN LAM a/k/ Hiu Yin Lam a/k/a Wendy Lam (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at MATSU FUSION RESTAURANT INC. d/b/a Matsu Japanese Fusion." (Amend. Compl. ¶ 13)

- "HIUYIN LAM a/k/ Hiu Yin Lam a/k/a Wendy Lam is a day-to-day manager who is at the store almost every single day from opening time to closing time." (Amend. Compl. ¶ 14)

- "HIUYIN LAM a/k/ Hiu Yin Lam a/k/a Wendy Lam would categorize the different delivery orders based on direction from the store (i.e. East from the store or West from the store) on busy or rainy days to make sure that all of the orders are timely delivered." (Amend. Compl. ¶ 15)

- "HIUYIN LAM a/k/ Hiu Yin Lam a/k/a Wendy Lam would also yell at Plaintiffs if there are too many orders and tell them off to do the orders faster." (Amend. Compl. ¶ 16)

- "HIUYIN LAM a/k/ Hiu Yin Lam a/k/a Wendy Lam was in charge of not only the deliverymen but also the rest of the restaurant as well." (Amend. Compl. ¶ 17)

- "HIUYIN LAM a/k/ Hiu Yin Lam a/k/a Wendy Lam would help out as needed throughout the restaurant." (Amend. Compl. ¶ 18)

- "HIUYIN LAM a/k/a Hiu Yin Lam a/k/a Wendy Lam acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with MATSU FUSION RESTAURANT INC. d/b/a Matsu Japanese Fusion." (Amend. Compl. ¶ 19)

3

On September 2, 2021, Plaintiffs filed a Second Amended Complaint. Between Paragraphs 21 and 43, Plaintiffs alleged that Defendant Lam is personally liable because she is an employer within the definition of FLSA and NYLL. The relevant allegations are as followed.

- "HIUYIN LAM a/k/a Hiu Yin Lam a/k/a Wendy Lam is a co-owner of MATSU FUSION RESTAURANT INC d/b/a Matsu Japanese Fusion with her husband Yi Chang Chen a/k/a Gary Chen, who is the Chief Executive Officer and New York Alcoholic Beverage Control principal for MATSU FUSION RESTAURANT INC d/b/a Matsu Japanese Fusion. HIUYIN LAM a/k/ Hiu Yin Lam a/k/a Wendy Lam (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at MATSU FUSION RESTAURANT INC. d/b/a Matsu Japanese Fusion." (2nd Amend. Compl. ¶ 21)

- "According to both of the Plaintiffs, Defendant HIUYIN LAM a/k/a Hiu Yin Lam a/k/a Wendy Lam was the day-to-day manager who would open the store at 10:30 am and would supervise the deliverymen, cashier/recipient, and packer together when she was there from 10:30 to 15:00 pm." (2nd Amend. Compl. ¶ 22)

- "Additionally, Defendant and owner YI CHANG CHEN a/k/a Gary Chen occasionally would go back to China for a month or two to visit his relatives and during the time that he was away Defendant HIUYIN LAM a/k/a Hiu Yin Lam a/k/a Wendy Lam would be the person who supervised and controlled the employees at the restaurant." (2nd Amend. Compl. ¶ 23)

- "HIUYIN LAM a/k/a Hiu Yin Lam a/k/a Wendy Lam would categorize the different delivery orders based on direction from the store (i.e. East from the store or West from the store) on busy or rainy days to make sure that all of the orders are timely delivered." (2nd Amend. Compl. ¶ 24)

- "HIUYIN LAM a/k/a Hiu Yin Lam a/k/a Wendy Lam would also yell at Plaintiffs if there are too many orders and tell them off to do the orders faster." (2nd Amend. Compl. ¶ 25)

- "Further, if there was a delivery that was packed wrong or delivered to the wrong address, Defendant Lam would direct the Plaintiffs to redeliver the order and warned them." (2nd Amend. Compl. ¶ 26)

- "Additionally at the end of the day Plaintiff were required to check and verify the orders they did and the tips that the received for the day and they would do this with Jessica Kuang or Defendant Lam." (2nd Amend. Compl. ¶ 27)

- "If the Plaintiffs went over the tips with Jessica, Jessica would tell the plaintiffs that the "Lady Boss", Defendant Lam, would double check to make sure the numbers were correct." (2nd Amend. Compl. ¶ 28)

- "HIUYIN LAM a/k/a Hiu Yin Lam a/k/a Wendy Lam was in charge of not only the deliverymen but also the rest of the restaurant as well." (2nd Amend. Compl. ¶ 29)

- "HIUYIN LAM a/k/a Hiu Yin Lam a/k/a Wendy Lam would help out as needed throughout the restaurant." (2nd Amend. Compl. ¶ 30)

- "Further Defendant Lam would sometimes drive Defendant Chen car with Plaintiff PEIZHENG FAN to purchase supplies for the restaurant from time to time. (2nd Amend. Compl. ¶ 31)

- "Defendant HIUYIN LAM a/k/a Hiu Yin Lam a/k/a Wendy Lam also had an influence on determining who stayed and who was fired." (2nd Amend. Compl. ¶ 32)

- "On two separate occasions Defendant Lam had the final say in deciding if a worker was to stay or go." (2nd Amend. Compl. ¶ 33)

- "The first instance was in or around September 2015." (2nd Amend. Compl. ¶ 34)

- "During this time one of the workers named Ah cao, told plaintiff GUANGFU CHEN and other deliverymen that he had a conversation with the Lady Boss, Defendant Lam, regarding his employment." (2nd Amend. Compl. ¶ 35)

- "Deliveryman Ah Cao stated that he told Lady Boss Lam, Defendant Lam that he was quitting, and Defendant Lam responded by saying that she will pay him more money fi he wanted." (2nd Amend. Compl. ¶ 36)

- "Deliveryman Ah Cao told Defendant Lam that he won't accept the offer and still decided to quit." (2nd Amend. Compl. ¶ 37)

- "The Second instance that shows that Defendant Lam had the final saying if a worker stayed or left was around December 2016." (2nd Amend. Compl. ¶ 38)

- "The "Boss", Defendant Chen, fired a packer by the name of Xu Zhen Wang and the next day Plaintiff GUANGFU CHEN went to the boss to see if the worker could get their job back." (2nd Amend. Compl. ¶ 39)

- "Defendant Chen stated that he would consider it but after a few days the worker came back and began working again." (2nd Amend. Compl. ¶ 40)

- "After a couple of months, the same packer was fired by the Lady Boss Lam and Plaintiff GUANGFU CHEN  was told from the delivery head that once you are fired from the lady boss there is no mercy leeway." (2nd Amend. Compl. ¶ 41)

- "These two instances showed to Plaintiffs that Defendant HIUYIN LAM a/k/a Hiu Yin Lam a/k/a Wendy Lam was more powerful that boss Chen and had the power to hire, fire and also determine workers raises." (2nd Amend. Compl. ¶ 42)

- "HIUYIN LAM a/k/a Hiu Yin Lam a/k/a Wendy Lam acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with MATSU FUSION RESTAURANT INC. d/b/a Matsu Japanese Fusion." (2nd Amend. Compl. ¶ 43)

On its face, the Second Amended Complaint calls doubt as to the credibility of the Plaintiffs. In the Second Amended Complaint, Plaintiffs alleged that Defendant Lam is present at the store from 10:30AM to 15:00PM. *See 2nd Amend. Compl.* ¶ 22. However, this is in direct contradiction of their previous allegation in their first Amended Complaint, where they stated that Defendant Lam "is at the store almost every single day from opening time to closing time." *See Amend. Compl.* ¶ 14. The Plaintiffs' statement that Defendant Lam's schedule ran from 10:30AM to 15:00PM also contradicts their allegation that at the end of the day Plaintiffs were required to check and verify the orders they did and the tips that they received for the day with Defendant Lam, since it is hard to imagine a restaurant in Manhattan closing at 15:00PM. *See 2nd Amend. Compl.* ¶ 27. It appears to Defendants that Plaintiffs are adjusting their allegations based on the Affidavit of Defendant Lam which was provided during a previously filed Motion to Dismiss, where Defendant Lam disclosed her hours are between 11:00am to 2:00pm. DE. [109]. This is highlighted by the fact that Plaintiff Chen alleges to have worked for almost 4 years from March 25, 2015 to March 12, 2019, and Plaintiff Fan alleges to have worked for almost two years from August 30, 2015 to July 17, 2017, but have to amend their allegation of the time that Defendant Lam, whom they claim is they employer, worked from a full day, "opening time to closing time", to "10:30AM to 15:00PM" based on Defendant Lam's own affidavit. *See 2nd Amend. Compl.* ¶¶ 7 - 8.

Plaintiffs also allege Defendant Lam to be an employer because Defendant Lam would "categorize the different delivery orders based on direction from the store on busy or rainy days to

6

make sure that all of the orders are timely delivered", "yell at Plaintiffs if there are too many orders and tell them off to do the orders faster", and "direct the Plaintiffs to redeliver the order" "if there was a delivery that was packed wrong or delivered to the wrong address." *See 2nd Amend. Compl*. ¶¶ 24 - 26. However, even if disregarding that Defendant Lam denies such conduct, what Plaintiffs described are exactly the duties of a cashier/receptionist that takes phone call orders and enters online orders, rather than the duty of an employer. *See Lam Aff*. ¶¶ 15 - 16.

Plaintiffs also make conclusory statements such as Defendant Lam "was in charge of not only the deliverymen but also the rest of the restaurant as well" and "would help out as needed throughout the restaurant", but do not support their conclusory statements. *See 2nd Amend. Compl*. ¶¶ 29 - 30.

In alleging Defendant Lam to be an employer, Plaintiffs also offer allegations of Defendant Lam having the authority to determine employee wages. Plaintiffs stated that around September 2015, a deliveryman named Ah Cao told other deliverymen that he had a conversation with Defendant Lam regarding quitting, and Defendant Lam stated she will pay Ah Cao more if he stayed. *See 2nd Amend. Compl*. ¶¶ 34 - 36. Not only is it suspicious that a worker that is quitting is going to announce to all other workers that he was going to be offered a raise for staying, this is also hearsay. The credibility of such statement is further called into question based on the fact that the individual Ah Cao only worked for two weeks, and did not share a good relationship with other deliverymen as he is from Malaysia and the other deliverymen are mostly from northern China. *See Hui Chen Aff. in Supp.* ¶ 7.

Plaintiffs also allege that on another occasion, a packer named Xu Zhen Wang was fired by Defendant Chen. *See 2nd Amend. Compl*. ¶ 39. The Plaintiffs stated that Plaintiff Chen went to Defendant Chen to see if the worker could get their job back, and Defendant Chen stated he would

consider it and after a few days the worker returned to work. *See 2ⁿᵈ Amend. Compl*. ¶¶ 39 - 40. Plaintiffs also allege that the same packer was fired by Defendant Lam a couple of months later, and that Plaintiff Chen was told by the delivery head that "once you are fired from the lady boss there is no mercy and leeway." *See 2ⁿᵈ Amend. Compl*. ¶ 41. First, the delivery head, whose name is Yuansheng Chen, never told Plaintiff Chen that Xu Zhen Wang was fired by Defendant Lam, nor that "once you are fired from the lady boss there is no mercy and leeway." *See Affidavit of Yuansheng Chen*. The reason the packer named Xuezhen Wang stopped working at the restaurant was not because she was fired by Defendant Lam, nor was she fired at all. In fact, Xuezhen Wang left because she was being sued by Plaintiff Guangfu Chen as well as because her relationship with Plaintiff Guangfu Chen deteriorated. *Aff. of Hiuyin Lam* ¶ 24.

Second, even if the actual reason that Xuezhen Wang left is disregarded, and the fact that Yuansheng Chen never informed Plaintiff Chen about Xuezhen Wang being fired or that Yuanshen Chen never said "once you are fired from the lady boss there is no mercy and leeway" are all disregarded, Plaintiff's allegations are based on hearsay and speculation, as Plaintiff Chen does not offer how he learned of Xu Zhen Wang being fired by Defendant Lam, instead only offering a statement from the "delivery head". Third, Plaintiffs' statement that Plaintiff Chen went to Defendant Chen to request for packer Xu Zhen Wang to be reinstated to their job, and stating that Defendant Chen states he will consider it and ultimately does have Xu Zhen Wang return and begin working again, is an indication that Plaintiff Chen has influence on whether a worker is fired or not.

### B. Lam's Affidavit

Lam is the mother of four children and her primary day to day responsibilities are taking care of her four children. *Lam Aff.* ¶ 3. When Plaintiff started working at Matsu Fusion Restaurant,

Lam's children were very young: her eldest daughter, Nicole was 14, her second daughter Neomi was 12, her third daughter Loreen was 11, and her youngest son Edwin was only 7 years old. *Id.* at ¶ 4.  Prior to 2016, Lam was a full-time stay at home mom but after her youngest child Edwin started kindergarten, she wanted to be more financially independent, so she started working part-time at Matsu Fusion Restaurant. *Id.* at ¶ 5. From 2016 to 2020, since Lam did not have a babysitter, her childcare schedule was extremely full, and thus had limited amount of time to work at Matsu Fusion Restaurant. *Id.* at ¶ 6. Because of Lam's limited hours at Matsu Fusion Restaurant–only a few hours during weekdays– she did "not have the power or capability to supervise or control any employees' work schedules or the conditions of any employees' employment." *Id.* at ¶ 27. Furthermore, no employee of Matsu Fusion Restaurant was ever under her supervision. *Id.* Lam is not the co-owner of Matsu Fusion Restaurant Inc., and her name is on neither the shareholders agreement nor the corporate tax return. *Id.* at ¶ 8. Additionally, she never hired or fired any employees of Matsu Fusion Restaurant and Lam does not have hiring or firing power at Matsu Fusion Restaurant. *Id.* at ¶ 14. Lam has never been involved in any discussion about increasing or decreasing an employee's wage or about any employee's job function and has never determined the rate or method of payment for employees at Matsu Fusion Restaurant Inc and has never maintained any employee records. *Id.* at ¶ 9, 28, 29.


**ARGUMENTS**

**I. Legal Standard**

Pursuant to Rule 12(b)(6), the Court may dismiss a complaint if it fails to "state a claim upon which relief can be granted." See, Fed. R. Civ. P. 12(b)(6). Although Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," a

complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although a "court must accept as true all of the allegations contained in a complaint," it is "inapplicable to legal conclusion." *Iqbal*, 556 U.S. at 678.

"A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of further factual enhancement" *Id*. quoting *Twombly* 550 U.S. at 555, 557. Therefore, the Court "need not accord legal conclusion, deductions or opinions couched as factual allegation . . . a presumption of truthfulness." *In re NYSE Specialist Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007). On a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555; citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Unless plaintiffs' allegations have "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 569.

## II. THE COMPLAINT DOES NOT CONTAIN ANY FACTUAL ALLEGATIONS UPON WHICH THE COURT CAN MAKE A REASONABLE INFERENCE OF LIABILITY THAT DEFENDANT HIUYIN LAM WAS AN EMPLOYER

"To be held liable under the FLSA, a person must be an 'employer.'" *Herman v. RSR Sec. Services Ltd*., 172 F.3d 132, 139 (2nd Cir. 1999). Pursuant to 29 U.S.C. § 203(d) of the FLSA, an employer is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." NY Lab L § 190(3) similarly defines "employer" to "include any person, corporation, limited liability company or association employing any individual in any occupation,

individual in any occupation, industry, trade business or service." Courts within the Second Circuit have generally interpreted "the statutory standard for employer status under NYLL to be nearly identical to that of the FLSA." *Beng Khoon Loo v. I.M.E. Restaurant, Inc*., 17-cv-02558-ARR-RER, 2018 WL 4119234, *4 (E.D.N.Y. Aug. 29, 2018); see also *Olvera v. Bareburger Group LLC,* 73 F.3d 201, 206 (S.D.N.Y. 2014); *Marcelino v. 374 Food, Inc.*, No. 16 Civ. 6287 (KPF), 2018 WL 1517205, at 12 (S.D.N.Y. March 27, 2018).

To determine whether a defendant is an employer within the context of the FLSA and the NYLL, courts have traditionally applied the "economic realities test", which examines the "formal" and/or "functional" control that the alleged employer may have over the employee. See, *Barfield v. New York City Health and Hosp. Corp.*, 537 F.3d 132 (2d Cir. 2008); *Herman*, 172 F.3d 132; *Zheng v. Liberty Apparel Company, Inc.*, 355 F.3d 61 (2d Cir. 2003). There are four factors under the economic reality test courts consider in determining whether there exists an employer-employee relationship: whether the alleged employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984).

It is well-settled that within the Second Circuit, the "mere boilerplate allegations that individual meets various prongs of the economic reality test are insufficient to survive a motion to dismiss with respect to pleading "Employer" status under FLSA. *See Sampson v. Medisys Health Network, Inc*., 2012 U.S. Dist. Lexis 103012, at *47 (E.D.N.Y. Feb 9, 2012) quoting *Diaz v. Consortium For Work Educ., Inc.*, 2010 U.S. Dist. Lexis 107722, at *11 (S.D.N.Y. Sep 28, 2010); *see also Gisomme v. Healthex Corp.*, 2014 U.S. Dist. Lexis 67588, at *10-11 (E.D.N.Y. May 15,

2015).  Although Plaintiffs alleged that Lam owned, operated, or controlled employees' schedules, Plaintiffs failed to make the necessary factual allegations that will allow the court to draw the reasonable inference that Lam was an "employer" within the definition of FLSA and NYLL, and thus, Plaintiffs failed to state a plausible claim for relief against Lam.

### 1. Power to Hire and Fire the Employees

With regards to the first *Carter* factor–whether the defendant had the power to hire or fire employees–Plaintiffs state the Defendant Lam had the power to fire employees by merely stating that a packer by the name of Xu Zhen Wang was fired by Defendant Lam. *2nd Amend. Compl.* ¶ 41. Plaintiffs do not offer any significant detail as to how or why the individual Xu Zhen Wang was fired, nor how Plaintiffs learned that the individual Xu Zhen Wang was fired by Defendant Lam, but instead conclusorily states that the individual was fired by Defendant Lam and instead offer a hearsay statement from a "delivery head" that "once you are fired from the lady boss there is no mercy or leeway. *Id.* Plaintiffs failed to plead sufficient facts to support the assertion that Lam had ever hired or fired any employees of Matsu Fusion Restaurant. Unless plaintiffs' allegations have "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 569.

In "determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense. *Id*. at 556. Plaintiff Guangfu Chen's failure to mention his litigation with the packer, whose actual name was Xuezhen Wang, as well as omitting facts which he has alleged in his complaint in that case, draws issues of credibility to his statement. It is also contrary to a reasonable inference that Defendant Lam, as a part-time cashier, would have the power to hire or fire employees of Matsu Fusion Restaurant.

Furthermore, Plaintiffs did not allege either one of them were hired by Lam; Plaintiffs also failed to allege any employee of Matsu Fusion Restaurant that was hired by Defendant Lam.

**2. Supervised and Controlled Employee Work Schedules or Conditions of Employment**

With regards to the second *Carter* factor, Plaintiffs in support of their assertion that Lam had the power to supervise and control employee work schedules or conditions of employment, alleged that Lam was "the day-to-day manager who would open the store at 10:30 am and would supervise the deliverymen, cashier/recipient, and packer together when she was there from 10:30 to 15:00 pm" (2nd Amend. Compl. ¶ 22). Plaintiffs also allege that Defendant Lam would be the person who supervised and controlled the employees at the restaurant while Defendant Chen was away. *2nd Amend. Compl.* ¶ 23. Plaintiffs failed to plead any facts to support the assertion that Defendant Lam supervised and controlled the employees at the restaurant by failing to provide any example of how Defendant Lam supervised or controlled employees. On a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555; citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Plaintiffs also alleged that Lam categorized delivery orders to ensure time delivery, would "yell at Plaintiffs if there [were] too many orders and tell them off to do the orders faster", and would direct Plaintiffs to redeliver if a delivery was delivered to the wrong address (2nd Amend. Compl. ¶¶ 24-26). However, "an individual does not become an employer merely by directing employees to carry out tasks related to customer service." *Beng Khoon Loo v. I.M.E. Restaurant, Inc.*, 17-cv-02558-ARR-RER, 2018 WL 4119234, *6 (E.D.N.Y. Aug. 29, 2018). In addition, even when an individual defendant gives employees orders or directions, she does not become an "employer" unless she also holds "an integral role in [the company's] operations, or in setting

work policies, schedules or conditions of employment." *Id.* (citing Chao v. Vidtape, Inc., 196 F.Supp.2d 281, 291 (E.D.N.Y. 2002)).

Plaintiffs further alleged that Lam was "in charge of not only the deliverymen but also the rest of the restaurant as well," and would "help out as needed throughout the restaurant." (Amend. Compl. ¶ 29 - 30). These factual allegations pleaded by Plaintiffs, however, do not lend to the reasonable inference that Lam had the power to supervise and control employee work schedules or conditions of employment.

Lam's role at Matsu Fusion Restaurant was limited to answering phone call orders, taking walk-in customers orders, entering online orders into a point-of-sale system, processing cash, credit card transactions, and welcoming customers. (Lam Aff.) While Lam indeed assisted with the coordination of delivery orders, she in no capacity supervised or controlled the deliverymen's schedule or work conditions. (Lam Aff.) Given Lam's marital relationship to Yi Chang Chen, the owner of Matsu Fusion Restaurant, Plaintiffs mistakenly believed that Lam had supervisory power over them. Plaintiffs' allegation that Lam would "tell them off to do the orders faster" is not sufficient to demonstrate that Lam had the power to control or supervise Plaintiffs because, contrary to Plaintiffs' subjective belief, Lam did not have the actual power to control or supervisor their schedule or performance. Plaintiff's subjective belief about an individual's employer status is not sufficient to give rise to liability. *McGlone v. Contract Caller, Inc*., 49 F.Supp.3d 364, 374 (S.D.N.Y. 2014). While Plaintiffs may have falsely believed that Lam, as a part-time cashier, exercised control over their schedules and the conditions of their employment, such subjective belief about Lam's employer status is not sufficient to give rise to liability.

Furthermore, Plaintiffs' allegations that Lam was at the restaurant during lunch hours and "helped out as needed throughout the restaurant" do not lend to the reasonable inference that she had the power to control or supervise employees. While Plaintiffs also alleged that Lam was a manager in charge of the deliverymen and the rest of the restaurant, the "naked assertion" alone "devoid of further factual enhancement" does not satisfy Plaintiffs' pleading obligations. *Iqbal*, 556 U.S. at 678.

### 3. Determined the Rate and Method of Payment

With regards to the third *Carter* factor, Plaintiffs only alleges one instance that a delivery man named Ah Cao told Plaintiff Chen that the individual Ah Cao told Defendant Lam he was quitting, and Defendant Lam responded by saying she will pay him more money if he wanted. *2nd Amend. Compl*. ¶¶ 35 – 36. A complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." Twombly, 550 U.S. at 558. Even if the allegations of Plaintiffs are true, it would only mean that a worker named Ah Cao has told Plaintiff Chen he was offered a raise by Defendant Lam, and not that Defendant Lam did in fact offer a raise to Ah Cao.

### 4. Maintained Employment Records

With regards to the final *Carter* factor, Plaintiffs merely made the conclusory statement that Lam maintained employment records without pleading any factual evidence. (See 2nd Amend. Compl. ¶ 21) Such allegation is a formulaic recitation of the elements under the economic reality test. As aforementioned, merely stating that a defendant satisfied a factor of the economic reality

test is conclusory and inadequate to establish an employer status. *Peng Bai v. Fu Xing Zhuo*, No.13 Civ. 05790(ILG)(SMG), 2014 WL 2645119, *4 (E.D.N.Y. June 13, 2014).

## III. TOTALITY OF CIRCUMSTANCE

The Second Circuit have applied a totality of circumstance approach to evaluate the factors of the economic reality test. *Kim v. Kum Gang, Inc.*, No. 12 CIV. 6344 (MHD), 2014 WL 12543811, at *3 (S.D.N.Y. Mar. 12, 2014) ("[T]he "economic reality" test encompasses the totality of circumstances, no one of which is exclusive.") citing *Herman*, 172 F.3d 132 at 139. Here, Plaintiffs' Amended Complaint failed to plead sufficient factual allegations to satisfy any of the four factors of the economic reality test. Even if it is true that Lam asserted some minor control on behalf of her husband Yi Chang Chen when assisting him in coordinating delivery orders, Lam is still not an employer within the definition of FLSA and NYLL, because the "occasional exercise of delegated authority is insufficient to establish an individual's employer status." *Allen v. PS Brother Gourmet*, Inc., No. 11 Civ. 5427 (AJN) (KNF), 2013 WL 11327098, at *4 (S.D.N.Y. Feb.1, 2013), and "an individual does not become an employer merely by directing employees to carry out tasks related to customer service." *Beng Khoon Loo v. I.M.E. Restaurant, Inc*., 17-cv-02558-ARR-RER, 2018 WL 4119234, *6 (E.D.N.Y. Aug. 29, 2018). In consideration of the totality of circumstances, Plaintiffs' failure to plead sufficient factual allegations as to allow the court to draw the reasonable inference that Lam is an employer and Lam's affidavit attesting to her limited role at Matsu Fusion Restaurant, Plaintiffs' mistaken belief with regards to Lam's co-ownership of the restaurant and subjective view of her authority are not sufficient to render Lam an employer within the context of the FLSA and NYLL.

In addition to this present case, there are two substantially similar ongoing lawsuits against Lam filed by the same law firm on behalf of the different plaintiffs that recite essentially the same boilerplate allegations. (Lam Aff.) Notably, no plaintiffs in any of the aforementioned lawsuits ever claimed to be hired or fired by Lam or claimed Lam determined their pay wage or controlled their job schedule.

Under *Iqbal's* plausibility analysis, the Complaint must be stripped by the Court of any allegations that are "labels and conclusions," "legal conclusions," "formulaic recitations" and "naked assertions." *Iqbal*, 556 U.S. 662. After discarding all the conclusory claims in the Amended Complaint alleging Lam as an employer, there remains no factual allegations specific to Lam that establishes any "degree of control," "formal" or "functional," over Plaintiffs.

## CONCLUSION

For the foregoing reasons, Defendant Hiuyin Lam respectfully requests that Plaintiffs' Amended Complaint against her be dismissed in its entirety and grant such other and further relief as the Court deems just and proper.

> /s/Hui Chen
> HUI CHEN, ESQ
> *Attorney for Defendant(s)*
> 136-20 38th Ave., Suite 9E
> Flushing, NY 11354
> Email: hui.chen@alum.cardozo.yu.edu

17